STATE OF NORTH CAROLINA v. NELSON RAY RICHARDS
AND JOHN MAXWELL HAROLD

No. 749SC212

(Filed 5 June 1974)

1. **Conspiracy § 7; Robbery § 5— conspiracy to commit armed robbery — sufficiency of instructions**

In a prosecution for conspiracy to commit armed robbery and armed robbery, the trial court's instruction correctly stated that one defendant could conspire with one or more of the persons mentioned,

and it did not suggest that defendant could conspire with himself or that he could be guilty of conspiracy even if he had made no agreement with anyone.

**2. Criminal Law § 113— alibi instruction — sufficiency**

The trial court's instruction on alibi which specifically stated that the State must prove defendants' presence and participation in the crime beyond a reasonable doubt and that, if the State had failed to do so, the jury should acquit defendants was proper.

**3. Criminal Law § 98— hearings on motions — presence of defendants' counsel**

All assignments of error directed to the consideration of pretrial and other motions when defendants were not present are overruled, since defendants were represented by able counsel who participated in the hearings on the motions, and at no time did counsel suggest the absence of defendants or note exceptions to their absence.

**4. Criminal Law §§ 95, 169— statements of nontestifying codefendant — any error in admission harmless**

Even if the trial court erred in allowing into evidence testimony by a State's witness as to telephone statements made by a nontestifying codefendant which referred to defendants, such error was harmless beyond a reasonable doubt.

ON *certiorari* to review trial before *McKinnon, Judge,* at the April-May 1973 Session of Superior Court held in FRANKLIN County.

Defendants were indicted for conspiracy to commit armed robbery and armed robbery. C. V. Cooley was indicted for accessory before and after the fact of armed robbery and conspiracy to commit armed robbery.

The State's evidence tended to show that on 4 November 1970, two men entered the Louisburg home of Walter H. Horton, Jr. and forced Horton to open his safe. One of the men held a gun on Horton, while the other ransacked the house. The men, one of whom Horton identified as defendant John Maxwell Harold, took about $30,000.00 worth of bonds, silver coins, cash and travelers checks.

On 13 December 1970, Durham County police officers stopped an automobile owned and operated by defendant Nelson Ray Richards. Acting pursuant to a search warrant issued in a matter unrelated to that presently before the court, the officers searched the automobile. They found two debentures which were identified as belonging to Horton.

In early 1972, Georgia law enforcement officials and SBI agent Roger Allen talked with Harvey Ward in Atlanta. Ward told the officers that Cooley and Richards had planned the robbery and that he and Harold had been recruited to help Richards carry it out. Some of Horton's property was recovered from a safety deposit box Ward rented in Atlanta. Ward was a witness for the State and gave evidence tending to show that all defendants were guilty as charged.

Although defendant Harold did not testify in his own behalf, his wife testified that in November 1970, Harold was living in Charlotte and was there on the date of the Louisburg robbery.

Defendant Richards, who said he lived in Jonesboro, Georgia in November 1970, claimed that he had won the debentures found in his automobile in a poker game in Durham on 6 December 1970. His evidence also tended to show he was staying in an Atlanta motel when the Horton robbery occurred.

Cooley was acquitted. Richards was found guilty of conspiracy to commit armed robbery and sentenced to an active prison term of 10 years. Harold was found guilty of armed robbery and conspiracy to commit armed robbery. He was sentenced to 24-30 years for the first offense and 10 years on the second. The terms are to run consecutively. We allowed certiorari to allow both defendants appellate review.

*Attorney General Robert Morgan by Lester V. Chalmers, Jr., Assistant Attorney General, for the State.*

*Blanchard, Tucker, Denson & Cline by Irvin B. Tucker, Jr., and Tharrington, Smith & Hargrove by Roger W. Smith, attorneys for defendant appellants.*

VAUGHN, Judge.

Defendant Richards contends that the court's instructions to the jury were erroneous in that they would permit defendant Richards' conviction for conspiracy "if he conspired with himself or if the defendant Ward conspired with Harold or Cooley with no connection with the defendant Richards at all." This contention involves the following portion of the court's charge:

"On the charge of conspiracy to commit an armed robbery against the defendant Nelson Ray Richards, I instruct you if you are satisfied from the evidence beyond a reason-

able doubt that there was an unlawful meeting of the minds between Nelson Ray Richards and C. V. Cooley, John Maxwell Harold and Harvey Allen Ward, or any one or more of those persons, to commit the crime of armed robbery upon Mr. Horton, if you find those to be the facts beyond a reasonable doubt, the defendant Nelson Ray Richards would be guilty of a conspiracy to commit armed robbery, as charged, and it would be your duty to so find.

If you fail to so find, or have a reasonable doubt as to his guilt of that, it would be your duty to find him not guilty."

In an earlier instruction the court stated:

"So, if several people have a meeting of the minds, it does not necessarily have to be in writing or in any express language, but if there is a meeting of the minds communicated between the parties that one is to direct or point out to others a place or a person to be robbed, and that others are to commit the robbery and that one or more of the parties are to engage in the disposing of the property taken, or in its division, then that would be a conspiracy on the part of each party entering into such an agreement whose mind met with one or more of the others as to the carrying out of those unlawful purposes."

[1]  The charge must be viewed as a whole. When so considered, the instructions do not suggest that defendant Richards could conspire with himself or that he could be guilty of conspiracy even if he had made no agreement with anyone. The contested section of the charge correctly states that defendant Richards could conspire with one or more of the others mentioned. Since there is no "and" between Cooley and Harold, defendant Richards is equated to one unit necessary for conspiracy while Cooley, Harold and Allen, together, alone or in any other combination, constitute the other necessary unit. Defendant Harold makes a similar argument. We find no error in this portion of the charge.

[2]  Both defendants complain that the court did not properly instruct on "alibi." The case was heard before the opinion in *State v. Hunt*, 283 N.C. 617, 197 S.E. 2d 513. The judge was therefore required, without request, to instruct the jury as to the legal effect of defendants' evidence that they were not present at the scene of the crime. The relevant instructions were as follows:

"As to both the defendant Richards, members of the jury, and the defendant Harold, they having offered evidence tending to show that they were somewhere else on the date of the offense charged, that is what is known as evidence in the nature of alibi. Alibi means to be elsewhere and it is evidence in denial of the one of the things that the State must prove, that is, the presence and participation of this party in the alleged criminal offense.

Evidence of alibi is to be considered by you just as any other evidence in denial of the State's contention and the State must prove beyond a reasonable doubt the defendants' presence and participation in the alleged crime.

If the State fails to prove beyond a reasonable doubt the presence and participation of Richards, then he would not be guilty. Likewise, if it failed to prove beyond a reasonable doubt the presence and participation of Harold, he would not be guilty of the charge."

The judge thus specifically told the jury that the State must prove defendants' presence and participation in the crime beyond a reasonable doubt and that if the State had failed to do so they should acquit defendants. In an earlier part of the charge the jury had been properly instructed as to the presumption of innocence and the burden the State must bear to prove guilt beyond a reasonable doubt. Surely the instruction that the State must prove defendants' presence makes it clear that defendants need not prove their absence. We find no prejudicial error in the instructions.

[3]  Several motions made by the State and defendants were heard when defendants were not present. These included motions for a special venire, consolidation of the cases, sequestration of witnesses and change in venue. Defendants were represented by able counsel who participated in the hearings on these motions and at no time did counsel suggest the absence of defendants or note exceptions to their absence. All assignments of error directed to the consideration of pretrial and other motions when defendants were not present are overruled.

[4]  Other assignments of error concern testimony by Ward as to statements defendant C. V. Cooley made during telephone conversations between Ward and Cooley after the robbery and prior to trial. The court instructed the jury to consider the evidence only in connection with the guilt or innocence of

defendant Cooley. Cooley did not testify. Assuming, without declaring, that it was error to admit Ward's version of the conversation between him and one of the other alleged conspirators, we will set out Ward's testimony as to the conversation to illustrate that the error, if any, was harmless beyond a reasonable doubt.

"A. Well, the phone rang, I picked it up, the man said, 'this is C. V., the man from up in Louisburg,' and I said, 'yeah, how did you get this phone number', I said, 'how did you know my name?' He said, 'well, Nelson left his address book laying here and I found it in that.' And he said he wanted to know what was going on, said—he asked 'how much money was in there?', and I said about fifteen hundred dollars and some bonds. He said, 'well'—I didn't tell him about the other six thousand dollars. He said, 'well, the paper up here said it was thirty or forty thousand dollars.' I said, 'well, Nelson has got these bonds, there was fifteen, twenty or twenty-five thousand dollars'. He said, 'well, I want to make sure that I get my part of the money.' He said, 'I think Nelson might try and screw out of them', told me that he would be back in touch with me and he left me a phone number in case I heard from Nelson.

EACH DEFENDANT MOVES TO STRIKE ANSWER.

MOTION DENIED.

RICHARDS' EXCEPTION NO. 11

HAROLD'S EXCEPTION NO. 9

He did leave me a phone number. I did not have any further conversation with that person at that time. I did have a conversation with this same person again at a later time. He called me and identified himself the same way. 'This is C. V., the guy from Louisburg', in return to a call that I made up here.

I called the number he had given me. A lady answered. I said 'is C. V. there?' She said, 'no', and I said 'is this the C. V. with the orange Pontiac' and she said 'yes'. I said 'do you know when he will be back', and she said, 'no'. I said 'fine'. The next day I called the same number and I called person to person for C. V. Cooley. The lady that answered the phone said he wasn't there. The operator left the num-

ber for him to call me back. She left my number. After I left my number with the lady for him to call me back, the man called back, said 'this is C. V., the man from Louisburg.' He called back the next day.

Q. What, if anything did this person tell you?

EACH DEFENDANT OBJECTS. OVERRULED.

A. He said that Nelson was flying into Atlanta with a girl, and he gave me the time of the flight and he said he thought he screwed us out of the money for the bonds. He said, 'you need to get out to the airport to find out what is going on.'

RICHARDS' EXCEPTION NO. 12

HAROLD'S EXCEPTION NO. 10

I went to the airport and Nelson Richards came in on the airplane.

Q. All right, what other conversation did you have with this man at that time?

EACH DEFENDANT OBJECTS.

COURT: OVERRULED as to the defendant Cooley. Objection SUSTAINED as to the defendants Harold and Richards, and the jury has previously been instructed not to consider that.

A. I called him back after seeing Nelson at the airport and told him I had seen Nelson out there and Nelson claimed that he had lost the bonds.

RICHARDS' EXCEPTION NO. 13

HAROLD'S EXCEPTION NO. 11

Q. How did you call?

A. I called the number —

DEFENDANT COOLEY OBJECTS.

OVERRULED BY THE COURT.

A. I called the number that the man had given me who had identified himself as 'C.V., the man from Louisburg.'

DEFENDANTS HAROLD AND RICHARDS MOVE TO STRIKE ANSWER.

DEFENDANT COOLEY OBJECTS, MOVES TO STRIKE ANSWER.

COURT: Again, members of the jury, any statements by the person on the telephone as testified by this witness are to be considered only against the defendant Cooley and not against the defendants Harold and Richards.

RICHARDS' EXCEPTION NO. 14

HAROLD'S EXCEPTION NO. 12

Q. Tell us what happened in that conversation.

A. I just told him that I had gotten in a hassel with Nelson at the airport and had slapped him and he had called the police and had me taken away, and I said that it looked like he wasn't going to give us the money for the bonds.

EACH DEFENDANT MOVES TO STRIKE ANSWER.

COURT: Motion allowed as to Harold and Richards, DENIED as to Cooley.

RICHARDS; EXCEPTION NO. 15

HAROLD'S EXCEPTION NO. 13

Q. What, if anything, did the other person say?

EACH DEFENDANT OBJECTS.

COURT: Objection OVERRULED as to Cooley, SUSTAINED as to Harold and Richards.

A. He said that he would get the money. He said that Nelson wasn't going to screw us out of it, that he would be back in touch with us, that he wasn't going to let Nelson beat us out of the money.

RICHARDS' EXCEPTION NO. 16

HAROLD'S EXCEPTION NO. 14

Q. Did you ever have any further telephone conversations with this person at any time?

A. About nine months ago.

Q. When was that?

EACH DEFENDANT OBJECTS.

COURT: Sustained as to the defendants Richards and Harold and OVERRULED as to the defendant, Cooley, and again, members of the jury, any conversation this witness may testify that he had with the person who identified himself as 'C.V.' on the phone may be considered only against the defendant Cooley and not against the defendants Richards and Harold.

RICHARDS' EXCEPTION NO. 17

HAROLD'S EXCEPTION NO. 15

Q. Where were you when you had a conversation with the person again?

A. At my house.

Q. All right, now, tell us how that came about.

EACH DEFENDANT OBJECTS.

COURT: SUSTAINED as to Harold and Richards and OVERRULED as to Cooley. Go ahead.

A. The man called, said this was 'C.V.' and he said 'did you know that we have all four been indicted?' I said, 'how do you know that?' and he said, 'some friend of Collins had told him, a friend of Mike Collins, and he had found out that we had all been under indictment and we were all going to be tried.'

RICHARDS' EXCEPTION NO. 18

HAROLD'S EXCEPTION NO. 16

Q. Was there any further conversation?

EACH DEFENDANT OBJECTS.

OVERRULED BY THE COURT as to Cooley.

SUSTAINED BY THE COURT as to Richards and Harold.

A. Then he asked me where John Harold was, and I said John was in Charlotte, and then he said he would find out more about it, and he would be back in touch with me. He just said 'keep your mouth shut.'

RICHARDS' EXCEPTION No. 19

HAROLD'S EXCEPTION No. 17

He didn't say anything else that I can recall at this time, other than we just discussed, you know, what he had heard and he just talked about not saying anything. He said, you know, 'if you are in any kind of bad way, just let me know' or something like that, but 'don't open your mouth at all.'

I had another conversation with this same person. It was several days after that, five, six, seven days, I am not exactly sure. This was after that first phone call. I was at the same number at my house. He called me.

Q. What, if anything, was said on that occasion?

EACH DEFENDANT OBJECTS.

COURT: OBJECTION SUSTAINED as to Richards and Harold.

OVERRULED as to Cooley.

A. He said that he had found out that Collins was going to testify against us and he said we might have to have him killed.

RICHARDS' EXCEPTION No. 20

HAROLD'S EXCEPTION No. 18

Q. Did you have any further conversation with him?

A. Yeah, he said that, 'did I think that John Harold would say anything?' I said, 'I didn't think he would,' and he said, 'well, if he does, you are going to have to take care of him because I can't do anything outside of North Carolina.'

EACH DEFENDANT OBJECTS.

COURT: SUSTAINED as to Harold and Richards, DENIED as to Cooley.

RICHARDS' EXCEPTION No. 21

HAROLD'S EXCEPTION No. 19

DEFENDANT COOLEY OBJECTS.

OVERRULED BY THE COURT.

DEFENDANTS HAROLD AND RICHARDS OBJECT.

SUSTAINED as to defendants Harold and Richards.

A. He said, 'we are all going to go to jail, and if any-body did any talking, that we would all be in the Raleigh State Prison, the North Carolina State Prison.' He said that his brother or somebody was a guard there and he said that we wouldn't last in there if we said anything against him."

All that Ward testified he did or told Cooley was, of course, competent. Ward was on the stand and subject to cross-examination and jury consideration of his veracity. Apparently the jury gave little credence to this and other testimony by Ward as to Cooley's involvement for Cooley was acquitted. Nothing that Cooley is alleged to have said with reference to defendant Harold is of significant value. In fact, the only references to Harold were Cooley's inquiries as to Harold's whereabouts and whether Ward thought that Harold would say anything.

Cooley's statements as to Richards were of little more consequence. Ward's statement that Nelson [Richards] had the bonds was competent. Cooley's alleged concern that Nelson might not share the bonds was no evidence that he had them. Cooley's later statement that Nelson was flying to Atlanta with the bonds added little to Ward's statements that he met Nelson at the airport, and that Nelson claimed he had lost the bonds and had caused Ward to be arrested after Ward slapped Nelson at the airport. There is no reasonable probability that the statements the witness Ward attributed to defendant Cooley contributed to the conviction of defendants Harold and Richards.

We have considered the other assignments of error and find them to be without such merit as to require a new trial.

No error.

Judges BRITT and PARKER concur.